UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JESUS FUENTES, as a Parent of a Disabled Child,

                       Plaintiff,

    -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, BARRY MASTELLONE,
Administrator of the HHVI of the New York City
Department of Education, and DENISE
WASHINGTON, Chief Administrator of Impartial
Hearing Office of the New York City Department
of Education,

                       Defendants.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 10-CV-1587 (FB)(MDG)

*Appearances*:
*For the Plaintiff*:
JESUS FUENTES, *pro se*
#98-A-4737
Clinton Correctional Facility
1156 Rt. 374
P.O. Box 2002
Dannemora, NY 12929-2002

*For the Defendant*:
JANICE CASEY SILVERBERG, ESQ.
New York City Law Department
Office of the Corporation Counsel
100 Church Street
Room 2-170
New York, NY 10007-2601

**BLOCK, Senior District Judge:**

    *Pro se* plaintiff Jesus Fuentes is the non-custodial parent of a disabled son, M.F. Fuentes brings this action against the New York City Department of Education ("DOE") and two DOE administrators, Barry Mastellone and Denise Washington (collectively, "defendants"). Fuentes contends that New York State's implementation of two portions of the Individuals with Disabilities Education Improvement Act, 20 U.S.C. §§ 1400 *et seq.* ("IDEIA") – § 1401(23), defining "parent," and § 1415(b), listing "procedural safeguards" that are guaranteed for parents of disabled children – deprives him of due process and equal protection under the Fourteenth

Amendment.[1]

## I

Section 1401(23) defines "parent" as "a natural, adoptive, or foster parent of a child," "a guardian" or "an individual acting in the place of a natural or adoptive parent . . . with whom the child lives, or an individual who is legally responsible for the child's welfare." 20 U.S.C. § 1401(23)(A)-(C). Section 1415 lists procedural safeguards that educational agencies must provide, including "[a]n opportunity for the parents of a child with a disability to examine all records relating to such child and to participate in meetings with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child, and to obtain an independent educational evaluation of the child." 20 U.S.C. § 1415(b)(1).

IDEIA leaves the clarification of terms like "parent" to the states, and New York State has defined "parent" to exclude non-custodial parents. *See Fuentes v. Bd. of Educ., et. al.*, 12 N.Y. 3d 309, 314 (2009); *Taylor v. Vermont Dept. of Educ.*, 313 F. 3d 768, 777 (2d Cir. 2002) (holding that "Congress drew the procedural and substantive contours of education for disabled children, but left the shading and tinting of the details largely to the states. States are responsible for filling in the numerous interstices within the federal Act through their own statutes and regulations.").

Liberally construed, Fuentes's papers argue that New York's definition of "parent"

---

[1] The original complaint alleged violations of Fuentes's Fourteenth Amendment rights. Fuentes later amended the complaint to assert claims under the Fifth Amendment instead. The Fifth Amendment applies only to claims against the federal government, which is not a defendant here. In light of Fuentes's *pro se* status, and because the substantive analysis is the same for the Fifth and Fourteenth Amendments, the Court will consider Fuentes's claims under the Fourteenth Amendment.

has deprived him of an opportunity to challenge the DOE's alleged failure to provide his disabled son with a free appropriate public education ("FAPE"). He seeks a declaratory judgment and an injunction prohibiting unconstitutional application of IDEIA as well as any other available remedies, including compensatory education for his son. Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons below, defendants' motion to dismiss is granted.

II

Fuentes's disapproval of the public education received by M.F., who is visually impaired, has already been voiced in state and federal court. Fuentes first requested that DOE evaluate M.F. for additional special education services in 2000. In June 2000, Mastellone provided Fuentes with a "Notice of Request for Review of Individualized Education Program ["IEP"]." Two months later, Mastellone advised Fuentes that M.F. had been evaluated by a school social worker, a school psychologist and an education evaluator, and that the group concluded that M.F. did not need additional services. When Fuentes sought review of that decision, Washington informed him that his request could not be processed because Fuentes was not M.F.'s custodial parent. Fuentes filed an action in federal court contending that this violated his rights under the Fourteenth Amendment and IDEIA. The Court dismissed the action for lack of standing because New York law does not give non-custodial parents the right to make educational decisions for their children.

Fuentes appealed and the Second Circuit, finding that there was no controlling authority on whether a non-custodial parent has standing to challenge the FAPE received by their child under IDEIA, certified that question to the New York State Court of Appeals. The

New York Court of Appeals held that "unless the custody order expressly permits joint decision-making authority or designates particular authority with respect to the child's education, a non-custodial parent has no right to 'control' such decisions. This authority properly belongs to the custodial parent." *Fuentes,* 12 N.Y. 3d at 314. The Second Circuit then affirmed the dismissal. Displeased with the outcome of his original action, Fuentes filed this action in April 2010.

### III

Fuentes is *pro se*. Because "most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements, we must construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections*, 232 F. 3d 135, 140 (2d Cir. 2000).

As a preliminary matter, to the extent Fuentes asserts claims on behalf of his son, those claims must be dismissed because "a non-attorney parent must be represented by counsel in bringing an action on behalf of his. . . child." *Cheung v. Youth Orchestra Found.*, 906 F. 2d 59, 61 (2d Cir. 1990). Accordingly, the following analysis addresses only the claims that Fuentes brings on his own behalf.

Defendants initially argue that Fuentes is precluded from bringing this action under the doctrines of res judicata and collateral estoppel.

First, "dismissal for lack of subject matter jurisdiction is not an adjudication of the merits, and hence has no res judicata effect." *St. Pierre v. Dyer*, 208 F. 3d 394, 400 (2d Cir. 2000). The dismissal of Fuentes's original case was a dismissal for lack of standing, and consequently his current claim is not barred on the grounds of res judicata.

Second, collateral estoppel, which is applied "to establish the preclusive effect of

4

a prior federal judgment, require[s] that (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Ball v. A. O. Smith Corp.*, 451 F. 3d 66, 69 (2d Cir. 2009) (internal quotation marks omitted).  The present case raises a different issue from the one raised in the previous proceeding.  In that proceeding Fuentes claimed that the state violated IDEIA by denying him the opportunity to challenge his son's educational program.  Fuentes now challenges the validity of the New York State Court of Appeals determination regarding who qualifies as a "parent" under IDEIA.

Generally, federal courts should avoid reaching constitutional questions where there are other, non-constitutional, grounds on which to decide a case. *See Allstate Ins. Co. v. Serio*, 261 F. 3d 143, 149-50 (2d Cir. 2001). Because Fuentes's claims cannot be dismissed on the grounds of claim preclusion, however, the Court will consider Fuentes's challenge to the constitutionality of New York's definition of "parent."

IV

Fuentes contends that his rights under the Equal Protection Clause were violated by New York State's implementation of IDEIA, which distinguishes between custodial and non-custodial parents.

**A. Standard of Review**

The first step in analyzing Fuentes's claim is to determine the applicable standard of review. Defendants contend that Fuentes's equal protection claim is subject to the rational basis test, which applies to classifications "neither involving fundamental rights nor

5

proceeding along suspect lines."[2] *Heller v. Doe*, 509 U.S. 312, 319 (1993). Such a classification will be "accorded a strong presumption of validity" and "cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Id.* As a preliminary matter, the Court must determine whether the right Fuentes asserts – the right, as a biological but non-custodial parent, to receive the extensive parental benefits outlined in IDEIA– is "fundamental," and whether non-custodial parents are a suspect class.

Parents have a well-established fundamental constitutional right to direct the upbringing and education of their children. *See, e.g. Meyer v. Nebraska*, 262 U.S. 390 (1923) (invalidating a law forbidding foreign language instruction in schools); *Pierce v. Society of Sisters*, 268 U.S. 510 (1925) (invalidating a law requiring children to attend public school). That right is a qualified one, however, and the right asserted by Fuentes falls well outside the scope of the fundamental right set forth in *Meyer*, *Pierce* and the cases that follow them. *See Leebaert v. Harrington*, 332 F. 3d 134, 141 (2d Cir. 2003) (holding that there is no "fundamental right of every parent to tell a public school" what his child will be taught because this would "make it difficult or impossible for any public school authority to administer school curricula responsive to the overall educational needs of the community and its children.").

A Seventh Circuit case, in which a non-custodial father claimed that the state violated a fundamental constitutional right by denying him the opportunity to participate in

---

[2] Because it was not addressed in their initial papers, the Court asked defendants to submit additional briefing in response to Fuentes's constitutional arguments. Fuentes was given until March 30, 2012 to file a reply to defendants' supplemental memorandum, but as of the date of this opinion had not filed a response.

his child's education, provides conceptual guidance. *See Crowley v. McKinney*, 400 F. 3d 965, 968 (7th Cir. 2005) (finding that "we greatly doubt that a non-custodial divorced parent has a federal constitutional right to participate in his child's education at the level of detail claimed by the plaintiff"). The non-custodial father in *Crowley* demanded and was denied access to all documents sent by the school to custodial parents, the opportunity to serve as a playground monitor in order to supervise the school's handling of bullies, and permission to attend a school book fair. The Seventh Circuit found that the non-custodial parent's claim asserted a "weaker" right than the fundamental rights established in cases like *Meyer* and *Pierce* because (1) "the challenge is only to one parent's control, the other's remaining unimpaired," and (2) "the state interest is stronger. . . [because it] is difficult for a school to accommodate the demands of parents when they are divorced." *Id.* at 969.

The Seventh Circuit's reasoning is persuasive. Congress took great care, in drafting IDEIA, to safeguard parents' fundamental interest in their children's education by including statutory provisions that give parents an enforceable right to oversee the manner in which the school provides their child's education. The challenged state action does not negate this. New York State's definition of parent excludes only those parents who, according to a state court judgment, have no custodial rights.

To hold that the right asserted by Fuentes qualifies as fundamental would place an additional hurdle in the path of school administrators already tasked with the difficult goal of providing disabled children with a FAPE by requiring educators to question the decisions of custodial parents and to navigate potential disputes between divorced parents. "Schools have valid interests in limiting the parental presence" in situations where that presence could interfere with their educational mission. *Id.* at 969-70.

7

In addition, non-custodial parents are not a suspect class. "The suspect or quasi-suspect classes that are entitled to heightened scrutiny have been limited to groups generally defined by their status, such as race, national ancestry or ethnic origin, alienage, gender and illegitimacy." *Able v. U.S.*, 155 F. 3d 628, 632 (2d Cir. 1998). Non-custodial status is not an "immutable characteristic" that would entitle a group to greater protection. *See e.g. Lyng v. Castillo*, 477 U.S. 635, 638 (1986) ("close relatives" were not a suspect class because "they do not exhibit obvious, immutable, or distinguishing characteristics that define them as a discrete group").

**B. Analysis**

Applying the rational basis test, it is next necessary to determine a "legitimate state interest" to which the challenged state action has a rational relationship. According to the statute, "[i]mproving educational results for children with disabilities is an essential element of our national policy of ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities." 20 U.S.C. § 1400(c)(1). The state interest in providing a quality education for disabled children, and in ensuring meaningful parental participation in the state's provision of public education, is certainly legitimate.

Under rational basis review, it is very difficult for individuals challenging a legislative judgment to "overcome the strong presumption of rationality that attaches to a statute." *Beatie*, 123 F. 3d at 711 (2d Cir. 1997). The burden is on the plaintiff to negate "every conceivable basis which might support the challenged law." *Price v. N.Y. State Bd. of Elections*, 540 F. 3d 101, 108 (2d Cir. 2008) (internal quotation marks omitted). Review under this standard "is not a license for courts to judge the wisdom, fairness, or logic of legislative

8

choices. . . [C]ourts are compelled under rational basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends." *Heller,* 509 U.S. at 319-21.

These standards are satisfied here. It is rational for the state to determine that only those "legally responsible for the child's welfare" should be included in the definition of "parents" entitled to participate in their child's education under IDEIA. Educators must have a means of determining who, of the individuals expressing an interest in a child's education, should be included in educational decisions. The easiest solution, where a state court has already given custody and decision-making authority to one parent, is for a school administrator or teacher to trust that the custodial parent will act on behalf of the child, and exclude the non-custodial parent from interfering with the custodial parent's decisionmaking. The Second Circuit has warned against permitting non-custodial parents to second-guess the decisions of custodial parents: "The [DOE] could not have intended that there would be a superfluity of parties able to exercise authority over the child under the regulation [IDEIA] simultaneously, each of whom may have conflicting ideas with respect to the child's education, with no means of choosing between them." *Taylor*, 313 F. 3d at 779. The government's interference with the parent-child relationship streamlines the process of providing quality public education to disabled children, and encourages participation by the guardian who is legally responsible for the disabled child's welfare.

As Fuentes has emphasized, this results in some unfairness– non-custodial status does not sever the relationship between biological parent and child, and many non-custodial parents no doubt have a sincere desire to ensure that their child receive a FAPE. However, a classification "does not fail rational basis review because it is not made with mathematical

9

nicety or because in practice it results in some inequality." *Heller*, 509 U.S. at 321. Imperfect solutions do not violate equal protection so long as there is some rational connection to a legitimate government purpose.

## V

Fuentes also contends that his substantive due process rights were violated when the state prevented him from receiving the benefits afforded to parents under IDEIA, including the opportunity to review and challenge the FAPE provided to their child. *See Immediato v. Rye Neck School Dist.*, 73 F. 3d 454, 460 (2d Cir. 1996) ("[T]he Due Process Clause of the Fourteenth Amendment embodies a substantive component that protects against certain government actions regardless of the . . . procedures used to implement them."). "For a substantive due process claim "to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Velez v. Levy*, 401 F. 3d 75, 93 (2d Cir. 2005) (internal quotation marks omitted); *see also Kaluczky v. City of White Plains*, 57 F. 3d 202, 211 (2d Cir. 1995) ("Substantive due process protects against government action that is arbitrary . . . or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised") (internal quotation marks omitted). Plainly, that is not the case here. The challenged state action does not rise to the level of a substantive due process violation.

## VI

Finally, to the extent that Fuentes asserts a claim that he was denied procedural due process, that claim must also be dismissed. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569

(1972) (noting that liberty interests are those "essential to the orderly pursuit of happiness by free men."). Fuentes's procedural due process claim fails because he has not identified any constitutionally protected liberty or property interest of which he was deprived. Fuentes refers to a liberty interest in the integrity of his parental rights and his ability to oversee his son's education. *See e.g. Rivera v. Marcus*, 696 F. 2d 1016, 1024-25 (2d Cir. 1982) (finding that the plaintiff "possesses an important liberty interest in preserving the integrity and stability of her family"). As is evident from the preceding discussion about parental rights in the context of equal protection, and from the New York State Court of Appeals decision regarding the standing of non-custodial parents under IDEIA, such a liberty interest does not exist in Fuentes's case; he possesses no constitutional entitlement to participate in the procedures afforded to custodial parents under IDEIA.[3]

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted, and Fuentes's complaint is dismissed in its entirety.

**SO ORDERED.**    s/ Judge Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 30, 2012

---

[3] There is no need to reach defendants' additional claim that the individual defendants are entitled to qualified immunity, because there has been no violation of any constitutional right in this case. *See Kerman v. City of N.Y.*, 374 F. 3d 93, 108 (2d Cir. 2004).